UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 13-CR-20158 |
| v. | HON. NANCY G. EDMUNDS |
| D-1 HICHAM ELHORR, M.D.<br>D-2 ALI ELHORR, M.D.<br>D-3 LAMA ELHORR<br>D-4 KELLY WHITE | VIO: 18 U.S.C. § 1349<br>18 U.S.C. § 1347<br>18 U.S.C. § 2<br>18 U.S.C. § 981 |
| Defendants. | 18 U.S.C. § 982 |

## FIRST SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

### The Medicare Program

1.  The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by 18 U.S.C. § 24(b).

3. The Medicare program included coverage under two primary components—hospital insurance (Part A) and medical insurance (Part B). Part A covered physical therapy, occupational therapy, and skilled nursing services if a facility was certified by CMS as meeting certain requirements. Part B covered the cost of physicians' services and other ancillary services not covered by Part A. Under certain circumstances, Medicare Part B covered the cost of "home visits" for evaluation and management services provided to a beneficiary by a physician in a private residence.

4. Medicare Part B in the State of Michigan was administered by Wisconsin Physicians Service ("WPS"), a company that contracted with CMS to receive, adjudicate, process, and pay certain Part B claims, including services related to physician home visits.

5. TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the state of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC.

6. Payments under the Medicare Program were often made directly to a provider of the goods or services, rather than to a beneficiary. This occurred when

the provider submitted the claim to Medicare for payment, either directly or through a billing company.

7.  Physicians, clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a Medicare "provider number." A health care provider who was issued a Medicare provider number was able to file claims with Medicare to provide reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name, the date the services were provided, the cost of the services, and the name and identification number of the physician or other health care provider who had ordered the services.

8.  By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

9. Medicare Part B regulations required health care providers enrolled with Medicare to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider under the Part B program.

10. Under Medicare Part B, a provider billing for a physician home visit was required to document the medical necessity of the service in lieu of an office or outpatient visit, to document the date the service was performed, and to identify the provider who performed the service. To be reimbursed for physician home visits purportedly provided by a physician, Medicare required that the physician be physically present at the home at the time the service was provided.

11. In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered.

12. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

13. Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form.

### The Physician Business

14. House Calls Physicians, PLLC ("HCP"), was a Michigan limited liability company, organized in or around January 2006, doing business at 6842 Park Avenue, Allen Park, Michigan. HCP was enrolled as a participating provider with Medicare and submitted claims directly to Medicare.

### The Defendants

15. Defendant HICHAM ELHORR, M.D., a resident of Wayne County, Michigan, was a licensed physician who was enrolled as a participating provider with Medicare. HICHAM ELHORR, M.D., owned and operated HCP and purportedly provided physician home visits to patients of HCP.

16. Defendant ALI ELHORR, M.D., a resident of Wayne County, Michigan, was a licensed physician who was enrolled as a participating provider with Medicare. ALI ELHORR, M.D., purportedly provided physician home visits to patients of HCP.

17. Defendant LAMA ELHORR, a resident of Wayne County, Michigan, and the sister of HICHAM ELHORR, M.D., and ALI ELHORR, M.D., was an office manager at and a biller for HCP and submitted claims for reimbursement to Medicare on HCP's behalf.

18. Defendant KELLY WHITE, a resident of Wayne County, Michigan, was an office manager at HCP.

### COUNT 1
### (18 U.S.C. § 1349—Health Care Fraud Conspiracy)

**HICHAM ELHORR, M.D.**
**ALI ELHORR, M.D.**
**LAMA ELHORR**
**KELLY WHITE**

19. Paragraphs 1 through 18 of the General Allegations section of this First Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

20. From in or around May 2008, and continuing through in or around September 2012, the exact dates being unknown to the Grand Jury, in Wayne County, in the Eastern District of Michigan, and elsewhere, the defendants, HICHAM ELHORR, M.D., ALI ELHORR, M.D., LAMA ELHORR, and KELLY WHITE, did willfully and knowingly combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a

health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

21. It was a purpose of the conspiracy for HICHAM ELHORR, M.D., ALI ELHORR, M.D., LAMA ELHORR, KELLY WHITE, and others to unlawfully enrich themselves by, among other things: (a) submitting false and fraudulent claims to Medicare for physician home visits and other services; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

22. HICHAM ELHORR, M.D., a physician licensed in the State of Michigan, would submit an application to become a Medicare provider under the HCP group. Medicare issued HICHAM ELHORR, M.D., a provider number under the HCP group with an effective date of on or about January 18, 2008.

23. HICHAM ELHORR, M.D., would purchase HCP in or around May 2008.

24. ALI ELHORR, M.D., a physician licensed in the State of Michigan, would submit an application to become a Medicare provider under the HCP group. Medicare issued ALI ELHORR, M.D., a provider identification number under the HCP group with an effective date of on or about July 1, 2009.

25. HICHAM ELHORR, M.D., ALI ELHORR, M.D., LAMA ELHORR, KELLY WHITE, and their co-conspirators would control the day-to-day operations at HCP.

26. HICHAM ELHORR, M.D., ALI ELHORR, M.D., LAMA ELHORR, KELLY WHITE, and their co-conspirators would submit or cause the submission of false claims to Medicare for services not rendered and not medically necessary, including by (a) billing for physician home visits that were not provided by licensed physicians, (b) billing for physician home visits purportedly rendered by HICHAM ELHORR, M.D., and ALI ELHORR, M.D., to patients in the State of Michigan on dates when they were not in the United States, (c) billing for

physician home visits purportedly rendered after the beneficiaries were deceased, and (d) billing for physician home visits that were not medically necessary and not provided.

27. LAMA ELHORR, KELLY WHITE, and other co-conspirators would fabricate and falsify and direct the fabrication and falsification of medical and billing documents to reflect or support purported physician home visits and other services billed to Medicare that were not medically necessary and not provided.

28. HICHAM ELHORR, M.D., ALI ELHORR, M.D., and other HCP physicians would sign medical documentation ordering physical therapy and other services purportedly provided and billed to Medicare by home health agencies, when in fact HICHAM ELHORR, M.D., ALI ELHORR, M.D., and the other HCP physicians had not seen or diagnosed the beneficiaries, in exchange for the beneficiaries' Medicare information and the opportunity to bill Medicare for physician home visits purportedly provided to the beneficiaries by HCP physicians.

29. HICHAM ELHORR, M.D., and ALI ELHORR, M.D., would prescribe beneficiaries controlled substances and allow others, including unlicensed individuals, to prescribe beneficiaries controlled substances under their licenses, when in fact HICHAM ELHORR, M.D., and ALI ELHORR, M.D., had not seen or diagnosed the beneficiaries, in exchange for the beneficiaries'

Medicare information and the opportunity to bill Medicare for physician home visits purportedly provided to the beneficiaries by HCP physicians.

30.	From in or around May 2008, through in or around October 2012, HICHAM ELHORR, M.D., ALI ELHORR, M.D., LAMA ELHORR, KELLY WHITE, and other co-conspirators caused HCP to submit approximately $11.5 million in claims to Medicare. More than three quarters of this billing—over $9 million—was for purported home visits that required a physician's physical presence in the beneficiary's home.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2–11
### (18 U.S.C. §§ 1347 and 2—Health Care Fraud)

### HICHAM ELHORR, M.D.
### ALI ELHORR, M.D.
### LAMA ELHORR

31.	Paragraphs 1 through 18 of the General Allegations section of this First Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

32.	On or about the dates enumerated below, in Wayne County, in the Eastern District of Michigan, and elsewhere, HICHAM ELHORR, M.D., ALI ELHORR, M.D., and LAMA ELHORR, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care

10

benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

33.     It was the purpose of the scheme and artifice for HICHAM ELHORR, M.D., ALI ELHORR, M.D., and LAMA ELHORR to unlawfully enrich themselves through the submission of false and fraudulent Medicare claims for services that were not rendered or not medically necessary.

### The Scheme and Artifice

34.     Paragraphs 22 through 30 of this First Superseding Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

35.     On or about the dates specified as to each count below, in Wayne County, in the Eastern District of Michigan, and elsewhere, HICHAM ELHORR, M.D., ALI ELHORR, M.D., and LAMA ELHORR, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described

11

scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program:

| Count Defendant | Medicare Beneficiary | Approximate Date of Service | Description of Items Billed | Approximate Amount Billed to Medicare |
|---|---|---|---|---|
| 2 H. ELHORR | G.W. | 1/2/2009 | Physician Home Visit (99350) | $250.00 |
| 3 H. ELHORR | D.L. | 8/11/2010 | Physician Home Visit (99345) | $250.00 |
| 4 H. ELHORR | J.B. | 8/11/2010 | Physician Home Visit (99349) | $135.00 |
| 5 H. ELHORR | V.U. | 9/1/2010 | Physician Home Visit (99349) | $135.00 |
| 6 H. ELHORR L. ELHORR | S.P. | 10/20/2011 | Physician Home Visit (99349) | $175.00 |
| 7 H. ELHORR L. ELHORR | N.F. | 10/20/2011 | Physician Home Visit (99349) | $175.00 |
| 8 H. ELHORR A. ELHORR | J.B. | 8/5/2010 | Physician Home Visit (99349) | $135.00 |

| Count Defendant | Medicare Beneficiary | Approximate Date of Service | Description of Items Billed | Approximate Amount Billed to Medicare |
|---|---|---|---|---|
| 9<br>H. ELHORR<br>A. ELHORR | C.B. | 8/5/2010 | Physician Home Visit (99349) | $135.00 |
| 10<br>H. ELHORR<br>A. ELHORR | E.B. | 8/5/2010 | Physician Home Visit (99349) | $135.00 |
| 11<br>H. ELHORR<br>A. ELHORR | L.K. | 8/9/2010 | Physician Home Visit (99349) | $135.00 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## FORFEITURE ALLEGATIONS
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;
18 U.S.C. § 982(a)(7)—Criminal Forfeiture)

36.  The above allegations contained in this First Superseding Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461.

37.  As a result of the violation of Title 18, United States Code, Section 1349, as set forth in this First Superseding Indictment in Count 1, HICHAM ELHORR, M.D., ALI ELHORR, M.D., LAMA ELHORR, and KELLY WHITE shall forfeit to the United States any property, real or personal, that constitutes or is derived from any proceeds obtained, directly or indirectly, as a result of such

violation, pursuant to 18 U.S.C. § 982(a)(7) and 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461.

38. As a result of the violations of Title 18, United States Code, Sections 1347 and 2, as set forth in this First Superseding Indictment in Counts 2-11, HICHAM ELHORR, M.D., ALI ELHORR, M.D., and LAMA ELHORR shall forfeit to the United States any property, real or personal, that constitutes or is derived from any proceeds obtained, directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. § 982(a)(7) and 18 U.S.C. § 981(a)(1)(C), as incorporated by 28 U.S.C. § 2461.

39. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other

property of the defendant up to the value of the forfeitable property described above.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
Grand Jury Foreperson

BARBARA L. MCQUADE
United States Attorney

s/Wayne F. Pratt
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-2548
wayne.pratt@usdoj.gov

s/Catherine K. Dick
CATHERINE K. DICK
Assistant Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.,
Third Floor
Washington, D.C. 20005
(202) 538-4049
(313) 226-0230
catherine.dick@usdoj.gov

s/Matthew C. Thuesen
MATTHEW C. THUESEN
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.,
Third Floor
Washington, D.C. 20005
(202) 679-4187
(313) 226-0829
matthew.thuesen@usdoj.gov

Dated: November 27, 2013

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>13-cr-20158 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

## Reassignment/Recusal Information
This matter was opened in the USAO prior to August 15, 2008 [ ]

| **Companion Case Information** | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: MCT |

**Case Title:** USA v. HICHAM ELHORR et. al.

**County where offense occurred:** Wayne

**Check One:** ☒ Felony     ☐ Misdemeanor     ☐ Petty

___Indictment/___Information --- **no** prior complaint.
___Indictment/___Information --- based upon prior complaint [Case number:              ]
✓ Indictment/___Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** 13-cr-20158     **Judge:** Nancy G. Edmunds

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|---|
| D-2 ALI ELHORR, M.D. | 18 U.S.C. § 1349 | 18 U.S.C. §§ 1347, 2 | |
| D-3 LAMA ELHORR | 18 U.S.C. § 1349 | 18 U.S.C. §§ 1347, 2 | |
| D-4 KELLY WHITE | 18 U.S.C. § 1349 | | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

November 27, 2013
Date

MATTHEW C. THUESEN
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Third Floor
Washington, D.C. 20005
(202) 679-4187
matthew.thuesen@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.     04/13